# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DWAYNE BROWN, | Case No. CV 15-0483-FMO (JEM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| LOS ANGELES SHERIFF DEPARTMENT, et al, | |
| Defendants. | |

Steven Dwayne Brown ("Plaintiff"), proceeding pro se and in forma pauperis, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

In accordance with the provisions governing in forma pauperis proceedings, the Court must screen the Complaint to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on

which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The complaint must contain factual allegations sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely possible or conceivable. Id. at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility. Id.

In a pro se civil rights case, the complaint must be construed liberally to afford plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621, 623 (9th Cir. 1988). Unless it is clear that the deficiencies in a complaint cannot be cured, pro se litigants are generally entitled to a notice of a complaint's deficiencies and an opportunity to amend prior to the dismissal of an action. Id. at 623. Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. Id.; Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007).

After careful review and consideration of the Complaint under the relevant standards and for the reasons discussed below, the Court finds that the Complaint must be **DISMISSED WITH LEAVE TO AMEND.**[1]

## ALLEGATIONS OF THE COMPLAINT

Plaintiff has sued the following defendants: Los Angeles County Sheriff's Department ("Sheriff's Department") and the following Sheriff's Department officials employed at the Men's Central Jail: Sergeant Morales; Deputy Saucedo; and Deputy Pena. (Complaint at 1, 5-6.)[2] Plaintiff names Sergeant Morales and Deputy Saucedo in both their individual and official capacities and Deputy Pena in his individual capacity only. (Complaint at 5-6.)

Plaintiff alleges that, at about 7:00 a.m. on January 9, 2015, Plaintiff was escorted to the hot shower unit on the Baker Tier to take a shower. Fifteen minutes into taking his shower, Plaintiff started a conversation with a "very popular Asian K-10 inmate" by the name of Vegas. Plaintiff told Vegas to become pro per "instead of paying his expensive lawyer." Before Vegas could respond, Deputy Saucedo whispered something into Vegas' ear. Deputy Saucedo hates Plaintiff, who named Saucedo in a civil claim filed with the County Board of Supervisors on December 22, 2014. (Complaint at ¶¶ 1-4, n. 1.)

Immediately upon Deputy Saucedo whispering into Vegas' ear, Vegas started to run towards Plaintiff, who was inside the shower cell. Vegas was screaming and yelling words in a foreign language, possibly Korean. When Vegas arrived in front of the shower cell, he extended his right leg in a karate style kick. However, "his momentum was such that it propelled [Vegas] into the shower cell iron bars which repelled him to an abrupt slip and fall backwards[.]" This caused Vegas' head to impact the concrete "to the level of a concussion." Deputy Saucedo ran to assist Vegas, who was handcuffed "from behind," to get up off the wet and slippery floor. Upon getting back up on his feet, Vegas began spitting

---

[1] In light of the above, the Court hereby VACATES the Court's Orders of April 22, 2015, and June 2, 2015, ordering service of process by the United States Marshal ("USM") and directing Plaintiff to submit documents required to effect service of process (**Docket Nos. 7-8, 15**).

[2] For ease of reference, the Court labels and refers to the pages in the Complaint in consecutive order, i.e., 1-18.

3

1  into Plaintiff's face.  Several other deputies arrived and dragged Vegas away.  Sergeant
2  Morales arrived as well.  When Plaintiff determined that Vegas was not seriously hurt,
3  Plaintiff "began to laugh so hard [that] it caused him to spasm[.]"  (Complaint at ¶¶ 5-8.)
4  　　　　Ten minutes later, Sergeant Morales instructed Deputy Macias (who is not a
5  defendant in this action) to handcuff Plaintiff.  Plaintiff was handcuffed and left cold and wet
6  in the shower for an hour.  Sergeant Morales stated that he "does 'not care if [Plaintiff] gets
7  sick with pneumonia.'"  (Complaint at ¶¶ 9-10.)
8  　　　　Sergeant Morales subsequently ordered Plaintiff out of the shower cell to the
9  disciplinary unit.  Sergeant Morales did not tell Plaintiff what the disciplinary charges against
10 him were or how long his discipline would last.  (Complaint at ¶ 10.)
11 　　　　While "the police" were taking Plaintiff out of the shower cell, Sergeant Morales told
12 Deputy Saucedo to "'bag all of [Plaintiff's] property.'"  Plaintiff objected, stating "'you can't go
13 in there without me, I have legal materials in that cell.'"  Sergeant Morales replied:  "'Just
14 video what you do.  He d[oes]n't have to see it."  According to Plaintiff, Deputy Saucedo had
15 been "prowling [around Plaintiff's] housing cell on camera on January 7th and 8th . . . as if
16 he were looking for something."  (Complaint at ¶¶ 10-11.)  Plaintiff alleges Deputy Saucedo
17 whispered into Vegas' ear to attack Plaintiff "as a pretext to perform search and remove
18 sensitive crime scene [and] autopsy photographs in color and $75.00 law journal from
19 Georgetown Law School."  (Complaint at 5.)
20 　　　　Sergeant Morales ordered Deputy Pena and Deputy Dominguez to "'get [Plaintiff] to
21 discipline.'"  Deputies Pena and Dominguez began shoving Plaintiff forward from behind
22 causing him to walk twice as fast as his previously injured right knee allowed.  The deputies
23 could hear Plaintiff asking them to "'slow down, you are hurting my knee.'"  (Complaint at ¶
24 12.)  Trying to slow the rushed pace, Plaintiff inadvertently extended his right leg "as a
25 brake", causing his extended right knee to "depress like a shock absorber without the rubber
26 absorbing material."  According to Plaintiff, "[t]he manoeuver caused so much pain that
27 [Plaintiff] screamed out very loud and collapsed[.]" This resulted in Plaintiff "being dragged
28 by Deputy Pena and Deputy Dominguez[.]"  (Complaint at ¶ 13.)

4

Sergeant Morales, seeing Plaintiff's "agony", ordered the escort to halt. Plaintiff was slammed against a wall face forward by Deputy Pena. Sergeant Morales then asked Plaintiff whether he was "'ready to go now?'" Plaintiff answered that "'yes, but slower please you are hurting my knee.'" Plaintiff was taken the remaining distance of about 50 steps in a "much slower and less painful manner." Plaintiff was not allowed to have his knee brace from his housing cell. He was "walking on adrenaline induced power for his right knee." (Complaint at ¶¶ 14-15.)

Upon arriving at the disciplinary unit, Sergeant Morales ordered Plaintiff to go inside a pitch dark cell. When Plaintiff refused out of fear because the cell had no light, Sergeant Morales told the two escorting deputies to "'put' [Plaintiff] 'in there.'" Deputies Pena and Dominguez "shoved" Plaintiff forward hard and fast causing more pain to Plaintiff's seriously injured knee. Plaintiff, who was handcuffed, cold, wet, and in pain, remained in the cold and dark cell for an hour. (Complaint at ¶ 16.)

Sergeant Morales returned an hour later with "his two pain dispensing deputies" and moved Plaintiff to a lighted cell. Plaintiff requested medical attention for the pain in his knee. Sergeant Morales responded that "'you don't need any medical attention Brown, there is nothing wrong with you.'" (Complaint at ¶¶ 17-18.)

When the pill call nurse arrived, she gave Plaintiff the pain medication Plaintiff was taking before "Sergeant Morales allowed his deputies to injure [Plaintiff]." The nurse stated that she would talk to the doctor. As of 8 p.m., Plaintiff still had not received medical treatment, although he was limping and in great pain. (Complaint at ¶ 19.)

Before the incidents underlying the claims in the Complaint took place, Plaintiff underwent an MRI on September 6, 2014, at the jail, which showed extensive right knee damage. Moreover, on October 1, 2014, the "LCMC Hospital" injected Plaintiff's knee with cortico-steroids and lidocaine and discharged Plaintiff with physical therapy exercises. (Complaint at ¶ 24.) According to Plaintiff, the "escorting defendants" knew Plaintiff had an injured right knee, and "all three defendants" had seen Plaintiff limping and wearing a knee brace. (Complaint at ¶ 23.)

Plaintiff alleges Deputy Saucedo seized Plaintiff's "legal crime scene photos and autopsy photos of a very sacred person" while Plaintiff was not present. According to Plaintiff, "[t]here was no urgency to move [Plaintiff] into a darkened punitive cell 100 yards away from his legal materials." (Complaint at ¶ 25.) Plaintiff states that Sergeant Morales returned to the disciplinary unit and said, "'here is your legal stuff'" and "if anything is missing to tell him." (Complaint at ¶ 28.) Plaintiff noticed that the autopsy crime scene photos and a "very large Georgetown law journal" were missing. Plaintiff notified Deputies Pena, Saucedo, Prest-wich, Macias, Dominguez, and Martinez that Plaintiff's crime scene and autopsy photos were missing. (Complaint at ¶ 29.) Plaintiff explains that "every night since September 16, 2014, Plaintiff would crawl under his jail bed to pray holding the crime autopsy photos in his hands begging the almighty to return the deceased person back to life." (Complaint at ¶ 26.) According to Plaintiff, he was taken to discipline "for the very purpose [of] seiz[ing] the documents the deputy 1700 staff witness [Plaintiff] holding under the bed at night." Plaintiff states, "[t]his type of invasion and seizure 'shocks the consci[ence]' and calls for emergency prospective relief." (Complaint at ¶ 27.) Plaintiff alleges that he is a pro se defendant in a capital murder case that has been "breached" by Defendants' actions. He states that he "has been prejudiced" and that the "District Court can order the Sheriff to investigate this deputy involved crime." (Complaint at ¶ 30.)

After placing Plaintiff in the disciplinary unit, "the defendant" ordered Vegas released from the disciplinary unit as a reward for assisting Sergeant Morales and Deputies Saucedo and Pena in getting Plaintiff into the disciplinary unit "by trickery and design[.]" (Complaint at ¶ 20.)

Plaintiff alleges that Defendants have each been named in grievances filed by Plaintiff, and they planned to inflict pain and punishment upon Plaintiff. (Complaint at ¶ 22.)

Plaintiff further states in his Complaint signed on the same day as when the incident underlying his claims took place that he does not know why he is in discipline, and he is at risk of further serious injury by not being allowed medical treatment for his damaged right knee meniscus that was injured again by Defendants. (Complaint at ¶ 22; id. at 16.)

Plaintiff states that "[i]t is widespread and systemic for deputy sheriffs to retaliate against inmates such as [Plaintiff]", and that "[t]he prevalence of retaliation is so common and practiced so as to constitute unwritten policy and custom." Plaintiff further alleges "[t]his policy harmed plaintiff." According to Plaintiff, "excessive force is so rampant that just last month in December 2014 [Mens Central Jail] agreed to settlement of excessive force [claims] by their deputies and . . . hired a civilian oversight agency." (Complaint at ¶ 33.)

Plaintiff states "the refusal of medical treatment for pain or [to] return . . . the crime scene photos and autopsy photos demonstrates a callous [and] reckless disregard [for] the injury caused by their actions." (Complaint at ¶ 32.) Plaintiff appears to allege that Defendants' actions caused him to suffer "loss of liberty and punishment as a pretrial detainee w[ithout] due process of law." (Complaint at 18.) He also appears to allege that Defendants retaliated against him for exercising his First Amendment rights to file administrative grievances. (See Complaint at 18.) He further alleges "use of excessive force deliberately applied for the very purpose of causing pain and injury for no legitimate pen[o]logical purpose[,]" and "deliberate indifference to the injury caused." (Complaint at 7.) He seeks compensatory and punitive damages, as well as injunctive and declaratory relief. (Complaint at 18.)

**DISCUSSION**

**I.     PLAINTIFF MUST NAME ALL DEFENDANTS IN THE CAPTION**.

Plaintiff's caption lists only the Sheriff's Department (Complaint at 1.) On pages 5 and 6 of the Complaint, however, Plaintiff lists the defendants in this action as Sergeant Morales, Deputy Saucedo, and Deputy Pena. Moreover, Plaintiff's allegations in the Complaint name other individuals not identified as defendants in the caption or on pages 5 and 6 of the Complaint. (See, e.g., Complaint at ¶¶ 12-13, 16, 29 (Deputy Dominguez), ¶ 19 (pill call nurse), ¶ 29 (Deputies Prest-wich and Martinez).) The individuals named as "defendants" only in the body of the Complaint have not been presented properly as parties, and the Court does not recognize them as defendants in this action. If Plaintiff files an amended complaint, he **must include in the caption the names of each defendant**

7

**against whom he is asserting a claim**.  See Fed. R. Civ. P. 10(a); Local Rule 11-3.8(d); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1262-63 (9th Cir. 1992) (dismissing action for refusal to comply with court orders to name defendants in the caption).  The Court will not order the United States Marshal to serve the amended complaint on any named defendant not identified in the caption.

## II.    THE COMPLAINT FAILS TO COMPLY WITH FED. R. CIV. P. 10.

Fed. R. Civ. P. 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . .  If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]"  Fed. R. Civ. P. 10(b).  "Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims."  Bautista v. Los Angeles County, 216 F.3d 837, 840 (9th Cir. 2000) (citation omitted).  "Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation."  Id. at 840-41.  "In such cases, separate counts permit pleadings to serve their intended purpose to frame the issue and provide the basis for informed pretrial proceedings."  Id. at 841. "'Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.'"  Id. (citations omitted).

Here, Plaintiff has not separately set forth his diverse claims – including the supporting facts for each claim – as separate counts, so as to allow the Court and Defendants to understand the scope and nature of Plaintiff's allegations.  Accordingly, the Complaint is subject to dismissal pursuant to Rule 10 because it improperly mixes allegations apparently related to different claims.  If Plaintiff wishes to filed an amended complaint, he shall set forth each claim as a separate count by clearly numbering and distinguishing from one another every civil rights claim, including the underlying factual

1  <u>allegations for each claim</u>.  Any claim that is not clearly numbered or separated from all
2  other claims <u>and</u> accompanied with the alleged facts supporting that claim will not be
3  addressed as a separate claim for relief.

4  **III.    THE COMPLAINT FAILS TO COMPLY WITH FED. R. CIV. P. 8.**

5        Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and
6  plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
7  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"
8  <u>Twombly</u>, 550 U.S. at 555 (internal citation omitted).  To comply with Rule 8, a plaintiff
9  should set forth "who is being sued, for what relief, and on what theory, with enough detail
10 to guide discovery."  <u>McHenry v. Renne</u>, 84 F.3d 1172, 1177 (9th Cir. 1996).  Conclusory
11 allegations are insufficient. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (Rule 8 "demands more than an
12 unadorned, the-defendant-unlawfully-harmed-me accusation"; a pleading that "offers labels
13 and conclusions or a formulaic recitation of the elements of a cause of action will not do.")
14 (internal quotation marks and citation omitted).

15       Plaintiff's Complaint does not comply with the standards of Rule 8.  Plaintiff's
16 allegations fail to clearly identify each individual claim, the incident(s) giving rise to each
17 claim, and the specific Defendants Plaintiff believes are liable for each of those claims.
18 Instead, the Complaint lumps all of Plaintiff's factual allegations together in simple
19 chronological order regardless of their relation to a particular claim.  This is insufficient.
20 Plaintiff must list his factual allegations according to the claims that he is asserting.  The
21 court is not required to sort through Plaintiff's allegations in search of a viable claim,
22 <u>Independent Towers of Wash. v. Wash.</u>, 350 F.3d 925, 929 (9th Cir. 2003); <u>see</u> <u>Greenwood</u>
23 <u>v. Fed. Aviation Admin.</u>, 28 F.3d 971, 977 (9th Cir. 1994), and Plaintiff's failure to plainly and
24 succinctly provide each defendant with fair notice of the bases for his allegations violates
25 Rule 8.  <u>See</u> <u>Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1059 (9th Cir. 2011);
26 <u>see also</u> <u>American Ass'n of Naturopathic Physicians v. Hayhurst</u>, 227 F.3d 1104, 1107-08
27 (9th Cir. 2000), <u>cert. denied</u>, 532 U.S. 1008 (2001) ("[A] pro se litigant is not excused from
28 knowing the most basic pleading requirements.").

In sum, Plaintiff's Complaint is subject to dismissal under Rule 8.

## IV. PLAINTIFF FAILS TO STATE A CONSTITUTIONAL CLAIM BASED ON THE SEARCH, SEIZURE, AND NEGLIGENT OR INTENTIONAL LOSS OF HIS PROPERTY.

To the extent Plaintiff alleges that defendants improperly searched, seized, and negligently or intentionally lost his personal property, i.e., the crime scene and autopsy photos and the Georgetown law journal, the Court notes that prisoners or pre-trial detainees have no reasonable expectation of privacy in their cells entitling them to Fourth Amendment protection against unreasonable search, seizure, destruction or conversion of their property. See Hudson v. Palmer, 468 U.S. 517, 527-28 (1984); Taylor v. Knapp, 871 F.2d 803, 806 (9th Cir.), cert. denied, 493 U.S. 868 (1989); see also Bell v. Wolfish, 441 U.S. 520, 556-57 (1979) (applying similar Fourth Amendment analysis to pre-trial detainees). Moreover, where a prisoner or pre-trial detainee alleges the deprivation of a property interest caused by the unauthorized action of an officer, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson, 468 U.S. at 533. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See Zinermon, 494 U.S. at 128-29. Here, the availability of a common law tort claim in California state court for the negligent or intentional loss of his property renders Plaintiff's claim non-cognizable under § 1983.

Accordingly, Plaintiff fails to state a constitutional claim based on the search, seizure, and negligent or intentional loss of his property. Any such claim must be dismissed.

## V. PLAINTIFF FAILS TO STATE A CLAIM FOR DENIAL OF HIS DUE PROCESS RIGHT TO PRESENT EVIDENCE IN A JUDICIAL PROCEEDING.

To the extent Plaintiff purports to state a claim for denial of his due process right to present evidence in a judicial proceeding, an officer's failure to preserve exculpatory evidence does not violate the Fourteenth Amendment unless the officer acted in bad faith. See Cunningham v. City of Wenatchee, 345 F.3d 802, 812 (9th Cir. 2003), cert. denied, 541

U.S. 1010 (2004). Here, Plaintiff fails to allege "specific, nonconclusory facts" to support an inference defendants "engaged in 'a conscious effort to suppress exculpatory evidence.'" Id. (quoting California v. Trombetta, 467 U.S. 479, 488 (1984)). To the contrary, Plaintiff alleges that, although the deputies "know [Plaintiff] goes under his bed every night as a ritual . . . [, t]hey do not know why. Now they do." (Complaint at ¶ 26 (explaining that "Plaintiff would crawl under his jail bed to pray holding the crime autopsy photos in his hands begging the almighty to return the deceased person back to life").) This suggests Defendants did not know the nature of the evidence – exculpatory or otherwise – that they allegedly planned to remove from Plaintiff's cell.

Accordingly, Plaintiff fails to state a claim for denial of his due process right to present evidence in a judicial proceeding based on Defendants negligent or intentional loss of his property. Any such claim must be dismissed.

## VI. PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE SHERIFF'S DEPARTMENT AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITY.

To allege a Section 1983 claim against a local governmental entity such as the County and the Sheriff's Department, Plaintiff must allege not only a constitutional deprivation, but also a policy, custom, or practice of the Sheriff's Department that was the "moving force" of the constitutional deprivation. Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008). Under Section 1983, local governments are responsible only "for their *own* illegal acts" and are not vicariously liable for their employees' conduct. Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011). Plaintiffs who seek to impose Section 1983 liability on local governments must prove that "action pursuant to official municipal policy" caused their injuries. Id. (quoting Monell, 436 U.S. at 691). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S.Ct. at 1359; see Monell, 436 U.S. at 694.

Here, Plaintiff has failed to identify any policy statements, regulations, officially adopted or promulgated decisions, customs, or practices by which any defendant allegedly inflicted the injuries about which Plaintiff is complaining. Plaintiff states conclusorily that "[i]t is widespread and systemic for deputy sheriffs to retaliate against inmates such as [Plaintiff]", that "[t]he prevalence of retaliation is so common and practiced so as to constitute unwritten policy and custom", and that "[t]his policy harmed plaintiff." (Complaint at ¶ 33.) Plaintiff alleges no specific facts to support these broad allegations, however. See Iqbal, 556 U.S. at 678-79 (legal conclusions must be supported by factual allegations); Dugherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (finding that plaintiff's conclusory allegations "lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by Twombly."); Warner v. County of San Diego, 2011 WL 662993, at *3–4 (S.D. Cal. 2011) ("formulaic recitations" of alleged government policy, practice or custom insufficient). Moreover, Plaintiff's vague claim that "just last month in December 2014 [Mens Central Jail] agreed to settlement of excessive force [claims] by their deputies and . . . hired a civilian oversight agency" fails to establish the existence of an unconstitutional municipal custom or policy that was the "moving force" behind the constitutional violations asserted. Plaintiff has not identified any policy, custom, or practice of the Sheriff's Department that resulted in the acts of which he complains. Absent such allegations, he has not alleged a claim against the Sheriff's Department. See Cameron v. Craig, 713 F.3d 1012, 1023 (9th Cir. 2013) (County entitled to summary judgment because plaintiff did not identify any custom or policy of the County that guided the deputies' use of force in the search and arrest).

An official capacity claim is merely another way of pleading a claim against the governmental entity of which the official is an agent. Monell, 436 U.S. at 690 n.55; see also Kentucky v. Graham, 473 U.S. 159, 165 (1985). Consequently, Plaintiff's claims against defendants in their official capacities are claims against the Sheriff's Department, and fail for the same reasons.

Accordingly, Plaintiff's claims against the Sheriff's Department and defendants in their official capacities must be dismissed.

## VII. PLAINTIFF FAILS TO STATE A CLAIM BASED ON ANY FAILURE TO PROVIDE MEDICAL TREATMENT FOR HIS INJURED KNEE.

The state must provide medical care to prisoners, because their incarceration has deprived them of the ability to secure medical care for themselves. Estelle v. Gamble, 429 U.S. 97, 103 (1976); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). Failure to provide medical care may violate the Cruel and Unusual Punishment Clause of the Eighth Amendment if it amounts to deliberate indifference to a prisoner's serious medical needs.[3] Estelle, 429 U.S. at 104

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059. Examples of serious medical needs include: '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-60.

Deliberate indifference requires that defendants purposefully ignore or fail to respond to the prisoner's pain or medical need. McGuckin, 974 F.2d at 1060. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with

---

[3] Plaintiff indicates that he was a pretrial detainee at the time of the alleged events. Claims by pretrial detainees arise under the Fourteenth Amendment Due Process Clause, whereas claims by prisoners arise under the Cruel and Unusual Punishments Clause of the Eighth Amendment. Bell, 441 U.S. at 535 n. 16. Nevertheless, "[b]ecause pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment," the Court analyzes Plaintiff's claim of inadequate medical care under the standards provided by the Eighth Amendment, despite Plaintiff's status as a pretrial detainee. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir.1991)).

medical treatment, or it may be shown in the way in which prison physicians provide medical care." Id. at 1059; see Estelle, 429 U.S. at 104-05. However, an inadvertent or negligent failure to provide medical care does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06. When medical treatment is delayed rather than denied, the delay generally amounts to deliberate indifference only if it caused further harm. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985); see also Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (delayed dental care did not violate Eighth Amendment because plaintiffs did not show that "delays occurred to patients with problems so severe that delays would cause significant harm").

Plaintiff's inadequate medical care claim appears to rest on his allegation that when Plaintiff requested medical attention for the pain in his knee after his confinement in the disciplinary unit, Sergeant Morales responded that "'you don't need any medical attention Brown, there is nothing wrong with you.'" (Complaint at ¶¶ 17-18.) Moreover, Plaintiff alleges the pill call nurse gave Plaintiff the pain medication Plaintiff was taking before "Sergeant Morales allowed his deputies to injure [Plaintiff]." The nurse stated that she would talk to the doctor. As of 8 p.m., Plaintiff still had not received medical treatment, although he was limping and in great pain. (Complaint at ¶ 19.) Plaintiff was not allowed to have his knee brace from his housing cell. (Complaint at ¶ 15.) Plaintiff alleges that, before the incidents underlying the claims in the Complaint took place, Plaintiff underwent an MRI on September 6, 2014, at the jail, which showed extensive right knee damage. Moreover, on October 1, 2014, the "LCMC Hospital" injected Plaintiff's knee with cortico-steroids and lidocaine and discharged Plaintiff with physical therapy exercises. (Complaint at ¶ 24.)

Plaintiff fails to allege that any Defendant acted with deliberate indifference to any serious medical need. Plaintiff acknowledges that he received pain medication after his confinement in the disciplinary unit. At most, Plaintiff has alleged a delay in seeing a doctor or obtaining his knee brace for his injured knee that lasted several hours or up to a day. Yet, Plaintiff does not set forth any facts demonstrating that any such delay harmed him.

See Wood, 900 F.2d at 1335 ("Nor did the delay substantially harm Wood's treatment, considering that the only remedy immediately available was a prescription for painkillers."). Significantly, Plaintiff has not alleged any facts showing that earlier treatment by a doctor or with a knee brace would have changed the outcome here. Plaintiff's allegations of delay in receiving treatment do not rise to the level of deliberate indifference to a serious medical need. See, e.g., Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (holding delays in administering pain medication, treating broken nose and providing replacement crutch did not constitute deliberate indifference); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (holding repeated failures to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pain does not rise to level of unnecessary and wanton infliction of pain).

Accordingly, Plaintiff's claim for deliberate indifference to a serious medical need must be dismissed.

## VIII. PLAINTIFF FAILS TO STATE A RETALIATION CLAIM.

Prison officials may not retaliate against prisoners for exercising their First Amendment rights to pursue litigation or file administrative grievances. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct, and (4) the adverse action chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. Id. at 567-68. Plaintiff has the initial burden of proving that the exercise of his First Amendment rights was a substantial or motivating factor behind defendant's conduct. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Plaintiff also bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Plaintiff alleges that Defendants have each been named in grievances filed by Plaintiff, and that they planned to inflict pain and punishment upon Plaintiff. (Complaint at ¶ 22.) He also states that Deputy Saucedo hates Plaintiff, who named Saucedo in a civil claim filed with the County Board of Supervisors on December 22, 2014. (Complaint at ¶¶ 1-4, n. 1.) As best the Court can glean from the allegations in the Complaint, Plaintiff appears to characterize all of Defendants' actions as retaliatory, i.e., Plaintiff's confinement to the disciplinary unit "by trickery", the failure to provide for medical treatment for Plaintiff's injured knee, the search, seizure, and negligent or intentional loss of Plaintiff's property, and the use of excessive force against Plaintiff. However, aside from conclusory allegations that Defendants' alleged actions were in retaliation for Plaintiff filing grievances, Plaintiff has not alleged any facts suggesting that Defendants' conduct was motivated by retaliation. See Iqbal, 556 U.S. at 678. Absent some connection between Plaintiff's filing of grievances and the alleged actions of Defendants, Plaintiff's allegations are insufficient to show that the actions of these Defendants were retaliatory.

Accordingly, Plaintiff's retaliation claims must be dismissed.

## IX. PLAINTIFF FAILS TO STATE A CLAIM FOR DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW RELATED TO HIS PLACEMENT IN THE DISCIPLINARY UNIT.

Plaintiff states in his Complaint signed on the same day as when the incidents underlying his claims took place that he does not know why he is in discipline. (Complaint at ¶ 22; id. at 16.) Plaintiff alleges that Sergeant Morales ordered Plaintiff out of the shower cell to the disciplinary unit and did not tell Plaintiff what the disciplinary charges against him were or how long his discipline would last. (Complaint at ¶ 10.) Plaintiff states that Defendants' actions caused him to suffer "punishment as a pretrial detainee w[ithout] due process of law." (Complaint at 18.)

As an initial matter, Plaintiff fails to allege that his temporary segregation presumably pending investigation of disciplinary charges constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" such that Plaintiff was entitled

16

to the procedural guarantees of the Fourteenth Amendment. Resnick v. Hayes, 213 F.3d 443, 448-49 (9th Cir. 2000) (internal quotation marks and citation omitted). Plaintiff did not allege any particular condition in administrative segregation which the law would determine to be atypical and harsh. See Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004) (three guideposts guide the determination of whether a prison hardship is atypical and significant, namely: 1) whether the challenged condition "'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,'" and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence) (quoting Sandin, 515 U.S. at 486-87). Plaintiff fails entirely to allege that the conditions of his confinement in the disciplinary unit, which had lasted mere hours or at most a day when Plaintiff signed his Complaint, did not "mirror[] those conditions imposed upon inmates in administrative segregation and protective custody," generally. Ramirez, 334 F.3d at 861. The allegations in the Complaint are insufficient to state a claim that Plaintiff was subjected to atypical and harsh conditions of confinement in the disciplinary unit. See Resnick, 213 F.3d at 447-49 (prisoner's retention in SHU for seventy days pending a disciplinary hearing did not give rise to a liberty interest protected by the Due Process Clause); Giddens v. White, 2007 WL 2265669, at *3 (D. Ariz. 2007) (Plaintiff failed to allege that he was subjected to hardship which was, in the context of the ordinary incidents of prison life, "atypical and significant" where he claimed loss of contact visits, commissary rights, and telephone use as a result of the disciplinary charges); cf. Wilkinson, 545 U.S. at 223-24 (indefinite placement of inmates in a "supermax" facility, where inmates are not eligible for parole consideration, imposes an "atypical and significant hardship within the correctional context"); Brown v. Oregon Dept. of Corrections, 2014 WL 1687758, at *4 (9th Cir. 2014) (finding plaintiff's 27 months of confinement in administrative segregation without meaningful review of his confinement imposed an atypical and significant hardship ).

Even if Plaintiff could establish that he had a liberty interest concerning his assignment to the disciplinary unit for several hours or up to a day, Plaintiff fails to allege that he was denied due process. A prisoner must receive "some notice" of the charges against him. See Hewitt v. Helms, 459 U.S. 460, 476 (1983). However, "the due process clause does not require detailed written notice of charges[.]" Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Here, Plaintiff's allegations appear premised on the fact that he did not receive notice of the reasons for his confinement in the disciplinary unit mere hours or up to a day after his confinement. (Complaint at ¶¶ 10, 22; id. at 16.) These allegations are insufficient to state a due process claim based on insufficient notice for his initial confinement in the disciplinary unit. See, e.g., Penton v. Huber, 2013 WL 1156501, at *5 (E.D. Cal. 2013) (plaintiff failed to allege due process violation based on insufficient notice for initial placement in administrative segregation because the information provided to plaintiff gave him sufficient and timely notice of the charges supporting the confinement, where plaintiff was informed at his ICC hearing five days after his confinement that he would be retained in administrative segregation pending investigation into his involvement in a battery on a peace officer).

Accordingly, Plaintiff's claims claim for deprivation of liberty without due process of law related to his placement in the disciplinary unit must be dismissed.

*************

For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

If plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above.

If plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3) be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself

without reference to the previous complaints or any other pleading, attachment or document. The Clerk is directed to provide plaintiff with a blank Central District of California civil rights complaint form, which plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if he fails to file a First Amended Complaint by the deadline set herein, the Court may recommend that this action be dismissed for failure to prosecute and failure to comply with a Court order.**

DATED: June 4, 2015

/s/ John E. McDermott
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE